## John Shepard *vs.* Gustavus Taylor *et als.*

When a legal estate in realty and an equitable, coming through different persons unite in the same holder, it is the course of the legal estate, not that of the equitable, which determines whether the holder of both does or does not have an ancestral estate under the Rhode Island canons of descent. Pub. Stat. R. I. cap. 187, § 6.

A. devised to his son B., in trust for another son C., certain realty, giving B. power to appoint a successor in the trust and to convey the realty to C. or his heirs when B. might

think proper. C. died, and his son C., junior, inherited the equitable estate. B. conveyed the legal title to C., junior, and C., junior, died under age and without issue.

*Held,* that the legal title did not come to C., junior, by descent, gift, or devise.

*Held,* further, that the estate of C., junior, in the realty was not an ancestral estate.

*Held,* further, that the mother of C., junior, inherited the realty from him.

BILL OF INTERPLEADER.

*December* 30, 1885. STINESS, J.   John Taylor devised an interest in real estate, in Providence, to his son, William H. Taylor, in trust for the use and benefit of another son, Alexander, and his heirs ; with power to appoint a successor, by will or otherwise, for the support of the trust ; or to convey the estate to said Alexander or his heirs, when he might think proper.   Alexander died leaving, besides his widow, a son Alexander, to whom the trustee subsequently conveyed the estate by deed, in fee.   Alexander, Jun., died in May, 1882, a minor and leaving no issue.   The complainant, lessee of the estate, files this bill of interpleader to determine his liability for rent, whether to Martha O. Taylor, mother of Alexander, Jun., who claims as his heir at law ; or to the other respondents, who claim that this is ancestral estate to which, under our statute,[1] they are entitled as " the kin, next to the intestate, of the blood of the person from whom such intestate came or descended."   As Alexander, Jun., had the absolute title to the estate, upon his death it vested in his mother as his heir at law, unless it was ancestral estate, in which case it vested in his paternal kindred.   The simple question to be determined, then, is whether the estate came " by descent, gift, or devise from the parent or other kindred of the intestate."   This involves two inquiries. *First.*   How did Alexander, Jun., acquire his title ?   *Second.* What is the rule to be followed when this is ascertained ?

During the life of his father the title subsisted in two parts : the legal title in the trustee ; the equitable title in the father.   Upon the death of Alexander, Sen., unquestionably his son took the equitable title by descent.   When the trustee conveyed the legal

---

[1] As follows : —

Pub. Stat. R. I. cap. 187, § 6 :

" When the title to any real estate of inheritance, as to which the person having such title shall die intestate, came by descent, gift, or devise, from the parent or other kindred of the intestate, and such intestate die without children, such estate shall go to the kin, next to the intestate, of the blood of the person from whom such estate came or descended, if any there be."

title to him, what was the nature of the title thus acquired? Clearly, it was not a title by descent, for it did not come to him from parent or kindred by operation of law. Neither was it a title by devise. Alexander, Jun., was not named in the will, nor was there any limitation in his favor, beyond that which showed the devise of an equitable fee to his father. Upon a conveyance by the trustee, the father could have disposed of the entire estate, without reference to the son. Whatever rights the son had under the will were simply those which he acquired by inheritance of his father's equitable estate. The legal estate was devised to the trustee, with a discretionary power. The conveyance of the legal title by the trustee was not a gift. Of course the word "gift" is not used in the statute in its ancient and technical application to the creation of an estate tail, 2 Blackstone Comment. *316, but with the common and broader meaning of a voluntary conveyance. 3 Washburn Real Property, 3d ed. 305. In this sense, however, there was no gift of the legal estate from the grandfather to Alexander, Jun. It did not go to him, but to the trustee; and the trustee might have conveyed it to Alexander, Sen., had he chosen to do so. There was no direction to convey the estate to Alexander, Jun. It might never have been conveyed to him, and yet the trust under the will have been fully performed. The deed to Alexander, Jun., was the act of the trustee, not the act of the testator. Alexander's rights were determined by his inheritance of the equitable estate, to which the conveyance of the legal estate, by the trustee, was incident. It cannot, then, be said that the legal estate came to him by gift from the grandfather through the conveyance by the trustee. Was it a gift by the trustee? This cannot be maintained, for the deed was made in consideration of the execution of the trust and the equitable claim of the grantee in the estate. The trustee could not, at that time, have disposed of it to any other person, without a breach of his trust. It was not, therefore, a voluntary conveyance.

It appears, then, that Alexander, Jun., had the equitable title by descent and the legal title by purchase, otherwise than by gift or devise. In such a case what is the rule of descent?

Cases upon this point are not numerous, but they are sufficiently clear.

In *Goodright* v. *Welles*, Doug. 771, Lord Mansfield puts the question, " Whether, when a *cestui que trust* takes in the legal estate, possesses under it, and dies, the legal and equitable estate shall open on his death, and be severed for the different heirs ? " He then says: " No case has ever existed where it has been so held; none where the heir at law of one denomination has, on the death of the ancestor, been considered as a trustee for the heir at law of another denomination, who would have taken the equitable estate, if that and the legal estate had not been united.   On principle it seems to me impossible; for the moment both meet in the same person, there is an end of the trust." It was therefore held, in this ‧ case, the legal estate in fee having descended from the mother and an equitable interest in fee from the father, that the equitable title merged in the legal title, and that the whole estate should follow the line of descent of the legal title.   *Wade* v. *Paget*, 1 Bro. C. C. 363 ; also in 1 Cox, 74.   In *Selby* v. *Alston*, 3 Ves. Jun. 339, where the equitable title descended *ex parte paternâ* and the legal title *ex parte maternâ* and united in the same person, the Master of the Rolls, afterwards Lord Alvanley, citing *Wade* v. *Paget*, said : " There Lord Thurlow ‧ lays down a universal proposition, to which I am inclined to accede, that where the estates unite, the equitable must merge in the legal.   That was the principle of the opinion of the judges in *Goodright* v. *Welles ;* and, upon consideration, I am inclined not to lay any restriction upon, or to narrow it in any respect, but to hold that, by whatever means, whether by conveyance or otherwise, a person obtains the absolute ownership at law of the estate, though he acquired that by an equitable title, and both either come together or are afterwards united in him, the legal will prevail; the equitable is totally gone for the purpose of being acted upon by any person in this court.   Therefore, that being to be laid down universally, this demurrer must be allowed against the plaintiff claiming as heir *ex parte paternâ.*"

Upon this authority Chancellor Kent, in *Nicholson* v. *Halsey*, 1 Johns. Ch. 416, holds that this rule may now be " laid down as a settled principle."   According to this rule, the legal title to the estate in question is the controlling title.   As that title did not come to Alexander Taylor, Jun., by descent, gift, or devise from his parent or other kindred, it must descend and pass to

his mother, according to the provisions of Pub. Stat. R. I. cap. 187, § 1.                                    *Decree accordingly.*

*John Doran*, for complainant.

*Nathan W. Littlefield*, for respondent Martha O. Taylor.

*James Tillinghast*, for other respondents.

This case was reargued on motion of the respondents, and, October 13, 1886, a rescript was filed stating that, after careful consideration, a majority of the court adhered to the opinion above given.